UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

───────────────────────────────────

WILLIAM CARTMELL,                        :
                                         :
                    Plaintiff,           :
                                         :
            v.                           :            No. 5:19-cv-1626
                                         :
CREDIT CONTROL, LLC,                     :
                                         :
                    Defendant.           :

───────────────────────────────────

**O P I N I O N**
**Defendant's Motion to Dismiss, ECF No. 28—Denied**

**Joseph F. Leeson, Jr.**                                    **January 10, 2020**
**United States District Judge**

**I.      INTRODUCTION**

        This is an action brought under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692

*et seq*. ("FDCPA"), in which Plaintiff William Cartmell contends that Defendant Credit Control,

LLC's attempt to collect a debt violated several provisions of that statute.  As with many FDCPA

cases, this case rests on the content of Credit Control's collection letter ("the Letter"), which

offered Cartmell three "payment options" for repayment of the debt.  Significantly, the Letter

failed to notify Cartmell that repayment of any part of the debt—which at the time the Letter was

sent was beyond the statute of limitations and therefore not judicially recoverable—could revive

the debt and subject him to liability.  Cartmell contends this omission constituted a violation of

the FDCPA's prohibition on unfair and deceptive debt-collection practices.

        There are currently four motions pending before the Court, each with opposition:  Credit

Control's motion to dismiss the Amended Complaint for lack of subject matter jurisdiction based

on Cartmell's failure to establish standing, Cartmell's motion for class certification, and both

parties' cross-motions for summary judgment. Because "[t]he requirement that jurisdiction be established [is] a threshold matter" that "'spring[s] from the nature and limits of the judicial power of the United States' and is 'inflexible and without exception,'" *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998) (quoting *Mansfield, C. & L.M.R. Co. v. Swan,* 111 U.S. 379, 382 (1884)), Credit Control's motion to dismiss for lack of jurisdiction must be resolved before the motions for either class certification or summary judgment can be addressed.[1]

Having reviewed both parties' arguments, the Court concludes that Cartmell has established standing sufficient to invoke the Court's subject matter jurisdiction. Consequently, for the reasons set forth below, Credit Control's motion to dismiss is denied.

## II.    BACKGROUND

### A.    Facts alleged in the Amended Complaint

The following are the relevant facts asserted in the Amended Complaint. Significantly, these facts—namely, the existence, date, and content of the Letter, as well as the nature and timeliness of the debt—are not in dispute.

Prior to April 23, 2018, Cartmell incurred a credit card debt to Credit One Bank, which was subsequently sold or transferred to LVNV Funding, LLC. Amended Complaint ("Am. Compl."), ECF No. 14, ¶¶ 14-15, 17. On or about April 23, 2018, Credit Control, LLC, a debt collector, caused to be delivered to Cartmell a collection letter in an attempt to collect on the debt. *Id*. ¶ 20. As of April 23, 2018, more than six years had elapsed since the last payment or activity on the LVNH Funding debt. *Id*. ¶ 24. The Letter offered Cartmell three "options" to pay the time-barred debt, while also stating, "[t]he law limits how long you can be sued on a debt.

---

[1]     The Court will rule separately on the remaining motions at a future date should their resolution remain necessary.

Because of the age of your debt, we will not sue you for it." *Id*. ¶¶ 23, 25. However—and at the heart of the dispute in this case—the Letter failed to inform Cartmell that should he choose one of the payment options and make a payment, such action might revive the statute of limitations for debt-collection purposes, which could expose him to future liability on the debt. *Id*. ¶ 26. Based on this omission, Cartmell asserts causes of action for violations of (1) 15 U.S.C. § 1692e, which prohibits the use of false, deceptive, or misleading representations or means in connection with the collection of any debt,[2] as well as (2) 15 U.S.C. §1692f, which prohibits the use of any unfair or unconscionable means to collect any debt. *See id.* ¶¶ 35-45.

**B. Procedural history**

The initial Complaint in this action was filed on or about April 15, 2019. *See* ECF No. 1. Counsel appeared before the Court for a Rule 16 initial conference on August 6, 2019, at which time a discovery schedule was put in place. *See* ECF Nos. 7, 9. On August 13, 2019, the parties filed a stipulation allowing Cartmell to file an Amended Complaint, *see* ECF Nos. 13-14, which was accepted for filing and remains the operative pleading in the case.[3]

In October 2019, the Court received correspondence from counsel indicating the existence of a potential discovery dispute. After receipt of this correspondence, on October 31, 2019, the Court extended the expert discovery deadline and scheduled a telephone conference, which was held on November 4, 2019. *See* ECF No. 18. At the conference, the Court issued several directives intended to resolve the dispute.[4] *See* ECF No. 21.

---

[2]     Section 1692e is "the provision of the [FDCPA] dealing with communications from debt collectors to debtors." *Jensen v. Pressler & Pressler*, 791 F.3d 413, 419 (3d Cir. 2015).

[3]     The Amended Complaint appears to have been filed for the purpose of converting this action from a single plaintiff action to a putative class action.

[4]     The underlying dispute concerned the production of paper discovery by Credit Control for the purposes of generating a list of potential class members. Nothing further as to any

On December 4, 2019, the previously-set deadline for the filing of dispositive motions, the parties filed cross-motions for summary judgment, *see* ECF Nos. 27, 30, in addition to a motion for class certification filed by Cartmell, *see* ECF No. 29, and the instant motion to dismiss for lack of subject matter jurisdiction by Credit Control, *see* ECF No. 28.

## III.   DISCUSSION

### A.   Legal Standard and Applicable Law

#### 1.   *Federal Rule of Civil Procedure 12(b)(1)*

Under Federal Rule of Civil Procedure 12(b)(1), "a court must grant a motion to dismiss if it lacks subject-matter jurisdiction to hear a claim." *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012); *Lenell v. Advanced Min. Tech., Inc.*, No. 14-CV-01924, 2014 WL 7008609, at *1 (E.D. Pa. Dec. 11, 2014) ("At issue in a Rule 12(b)(1) motion is the court's 'very power to hear the case.'" (quoting *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 (3d Cir. 2006))). "A challenge to subject matter jurisdiction under Rule 12(b)(1) may be either a facial or a factual attack. The former challenges subject matter jurisdiction without disputing the facts alleged in the complaint, and it requires the court to 'consider the allegations of the complaint as true.'" *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016) (quoting *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 n.3 (3d Cir. 2006)). "The latter, a factual challenge, attacks the factual allegations underlying the complaint's assertion of jurisdiction, either through the filing of an answer or 'otherwise present[ing] competing facts.'" *Davis*, 824 F.3d at 346 (quoting *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014)). When a movant presents a factual challenge to jurisdiction, the burden is on the

---

discovery issues was filed or otherwise brought to the Court's intention following this telephone conference.

plaintiff to show the presence of jurisdiction, and the trial court "may independently evaluate the evidence regarding disputes over jurisdictional facts, rather than assuming that the plaintiff's allegations are true." *Lenell*, 2014 WL 7008609, at *2 (quoting *CNA v. United States,* 535 F.3d 132, 140 (3d Cir. 2008), *as amended* (Sept. 29, 2008)).

The initial question, then, is whether Credit Control's challenge to jurisdiction is facial or factual, the answer to which will in turn dictate the scope of what the Court may consider in resolving the challenge—the allegations alone if the challenge is facial, or evidence beyond the pleadings if the challenge is factual. *See In re Schering Plough Corp.*, 678 F.3d at 243. Credit Control contends that evidence outside the pleadings negates subject matter jurisdiction. According to Credit Control, Cartmell's deposition testimony establishes that he "understood that the debt was too old for him to be sued on it and he never intended to make a payment in response to Credit Control's letter. Therefore, Cartmell suffered no injury and was not at risk of suffering any harm."[5] Credit Control's Moving Memorandum ("Credit Control Mem."), ECF No. 28, at 5. Cartmell responds by arguing, in essence, that because Credit Control violated a substantive right conveyed by the FDCPA—the right to be free from false, deceptive, or misleading representations in debt collection—as opposed to a mere procedural right, the violation in and of itself is sufficient to satisfy the injury-in-fact requirement of Article III. *See, e.g.*, Cartmell's Opposition Memorandum ("Cartmell Opp'n."), ECF No. 34, at 6-9.

Although the key facts alleged in the operative pleading are not contested—Credit Control does not dispute the nature of the debt or the content of the Letter, or that the Letter was

---

[5]     Rule 12(b)(1) is the proper vehicle for Credit Control's motion. *See In re Schering Plough Corp.*, 678 F.3d at 243 ("A motion to dismiss for want of standing is . . . properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter." (quoting *Ballentine v. United States,* 486 F.3d 806, 810 (3d Cir. 2007))).

sent to Cartmell by Credit Control in an attempt to collect on the debt—because Credit Control asserts facts beyond the pleadings are dispositive as to jurisdiction, Credit Control's motion is properly considered a factual attack on subject matter jurisdiction.  As a result, the Court is free to weigh evidence beyond the pleadings in its analysis.[6]  *See CNA*, 535 F.3d at 140, 145.

With an understanding of the nature and contours of Credit Control's challenge to jurisdiction, the Court briefly reviews principles of Article III standing generally before turning to a review of standing principles in the context of the FDCPA specifically.

### 2.    *Article III standing generally*

Article III, Section 2 of the United States Constitution limits the jurisdiction of federal courts to actual "Cases" and "Controversies."  U.S. CONST. art. III, § 2.  As the Supreme Court has stated, "the core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III."  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (citing *Allen v. Wright*, 468 U.S. 737, 751 (1984)); *Davis*, 824 F.3d at 346 ("Standing is a jurisdictional matter. 'Absent Article III standing, a federal court does not have subject matter jurisdiction to address a plaintiff's claims, and they must be dismissed.'" (quoting *Taliaferro v. Darby Twp. Zoning Bd.*, 458 F.3d 181, 188 (3d Cir. 2006))).  Over the years, federal jurisprudence has

> established that the irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical.  Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court.  Third,

---

[6]      It is worth noting that Cartmell's position does not rely on any facts beyond the pleadings, and, as discussed at length below, it is Cartmell's position that prevails.  As a result, while the Court's analysis is conducted through the lens of a "factual" challenge to jurisdiction, Credit Control's additional "facts" are, in the end, immaterial.

it must be "likely," as opposed to merely "speculative," that the injury will be redressed by a favorable decision.

*Lujan*, 504 U.S. at 560-61 (internal quotations and citations omitted). Since these elements are not mere pleading requirements but rather jurisdictional prerequisites, "each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Id.* at 561.

The Supreme Court's 2016 decision in *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016), *as revised* (May 24, 2016), a case brought under the Fair Credit Reporting Act, bears heavily on the instant analysis for what the Court said regarding the ability to claim an *intangible* injury as the basis for standing—the very issue at the heart of Credit Control's motion. As the Third Circuit recently observed, the Supreme Court in *Spokeo* "highlighted that there are two elements that must be established to prove an injury in fact—concreteness and particularization," however, the Court "rejected the argument that an injury must be 'tangible' in order to be 'concrete.'" *In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625, 637 (3d Cir. 2017) (citing *Spokeo*, 136 S. Ct. at 1545, 1549). The Court in *Spokeo* "explained that 'both history and the judgment of Congress play important roles' in determining whether 'an intangible injury constitutes injury in fact.'" *In re Horizon*, 846 F.3d at 637 (quoting *Spokeo*, 136 S. Ct. at 1549). Thus, *Spokeo* indicates that an intangible harm can satisfy the injury-in-fact requirement of Article III if (1) "'an alleged intangible harm' is closely related 'to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American Courts,'" *In re Horizon*, 846 F.3d at 637 (quoting *Spokeo*, 136 S. Ct. at 1549), or (2) an alleged intangible harm has been elevated by Congress "to the status of [a] legally cognizable injur[y]," *Spokeo*, 136 S. Ct. at 1549 (quoting *Lujan*, 504 U.S. at 578).

Where a plaintiff claims standing based on a congressionally-elevated intangible harm—the second method identified above—a court must "ask[ ] whether Congress has expressed an intent to make an injury redressable." *In re Horizon*, 846 F.3d at 637. Importantly, "congressional power to elevate intangible harms into concrete injuries is not without limits. A 'bare procedural violation, divorced from any concrete harm,' is not enough."[7] *Id.* (quoting *Spokeo*, 136 S. Ct. at 1549). On the other hand, "the violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact. In other words, a plaintiff in such a case need not allege any *additional* harm beyond the one Congress has identified." *Spokeo*, 136 S. Ct. at 1549 (emphasis in original). In such circumstances, "a procedural right protects a concrete interest," and "a violation of that right may create a sufficient 'risk of real harm' to the underlying interest to 'satisfy the requirement of concreteness.'" *Kamal v. J. Crew Grp., Inc.*, 918 F.3d 102, 111 (3d Cir. 2019) (quoting *Spokeo*, 136 S. Ct. at 1549).[8]

### 3. Standing, the FDCPA, and recent developments in case law

The post-*Spokeo* case law addressing standing based on intangible harms is extensive. Although the Court has come across no case that is precisely on point[9]—that is, where (i) an

---

[7]    The Supreme Court in *Summers v. Earth Island Institute*, 555 U.S. 488 (2009) explained that "[d]eprivation of a procedural right without some concrete interest that is affected by the deprivation—a procedural right *in vacuo*—is insufficient to create Article III standing. Only a person who has been accorded a procedural right to protect *his concrete interests* can assert that right without meeting all the normal standards for redressability and immediacy." *Id.* at 496 (quotation omitted) (emphasis in original).

[8]    Importantly, *Spokeo* does not redefine the injury-in-fact requirement of standing; rather, "it reemphasizes that Congress 'has the power to define injuries'" that "were previously inadequate in law." *In re Horizon*, 846 F.3d at 638 (quoting *Spokeo*, 136 S. Ct. at 1549).

[9]    Although Cartmell claims *Pierre v. Midland Credit Mgmt., Inc.*, No. 16 C 2895, 2019 WL 4059154 (N.D. Ill. Aug. 28, 2019) "involves exactly identical facts" as the facts of the instant case, Cartmell Opp'n. at 19 (emphasis in original), the Court respectfully disagrees that the facts are identical. One distinction is that Pierre testified to her emotional distress at receiving the collection letter at issue and no such testimony exists for Cartmell. *See, e.g.,*. *Pierre*, 2019 WL 4059154, at *4-*5. The facts are otherwise very similar.

FDCPA plaintiff claims a violation of the statute's prohibition on unfair and deceptive debt collection practices and (ii) the defendant points to affirmative evidence of the absence of intent to pay the debt to negate standing—a survey of decisions, both from within and without this Circuit, is necessary.

In *Balon v. Enhanced Recovery Co., Inc.*, 264 F. Supp. 3d 597 (M.D. Pa. 2017), a debt collector sent a collection letter to the debtor-plaintiff in an attempt to collect a $798.67 debt. *Id.* at 601. The collection letter stated, in part, that "any indebtedness of $600.00 or more, which is discharged as a result of a settlement, may be reported to the IRS as taxable income pursuant to the Internal Revenue Code 6050 (P) and related federal law." *Id.* The offer to settle was for $638.94, such that "[t]he amount of savings if the offer was accepted would be $159.73" *Id.* The district court observed that, while the Third Circuit had not, as of the date of the decision, addressed whether a mere procedural violation of the FDCPA can give rise to a concrete injury,[10] post-*Spokeo*, "a number of district courts in the Third Circuit have addressed that question." *Id.* at 608. "In fact," it stated, "[s]ince *Spokeo* was decided, the overwhelming majority of courts that have faced Article III standing challenges in FDCPA cases . . . have determined that a violation of the FDCPA produces a 'concrete injury.'" *Id.* (quotation marks omitted) (collecting cases).[11] The district court concurred with those courts that "[i]n enacting FDCPA, Congress elevated certain abusive debt collection practices to the status of viable federal causes of action," including the very conduct prohibited by 15 U.S.C. § 1692e. *Id.* at 610 (quoting *Bock v. Pressler*

---

[10]     The Third Circuit addressed this issue in *Kamal v. J. Crew Grp., Inc.*, 918 F.3d 102 (3d Cir. 2019), discussed *infra.*

[11]     *See also Sullivan v. Allied Interstate, LLC*, No. CV 16-203, 2016 WL 7187507, at *5 (W.D. Pa. Oct. 18, 2016) ("Since *Spokeo* was decided, the overwhelming majority of courts that have faced Article III standing challenges in FDCPA cases, including this Court, have determined that a violation of the FDCPA produces a 'concrete injury.'"), *report and recommendation adopted*, No. CV 16-203, 2016 WL 7189859 (W.D. Pa. Dec. 9, 2016).

*& Pressler, LLP*, 254 F. Supp. 3d 724, 733 (D.N.J. 2017)).  The district court moreover observed that "[t]he right to truthful information" in the context of 15 U.S.C. § 1692e "is a substantive right." *Balon*, 264 F. Supp. 3d at 610 (quoting *Bock*, 254 F. Supp. 3d at 733).  Having previously determined that the debtor-plaintiff adequately pleaded a violation of 15 U.S.C. § 1692e,[12] the district court concluded that the debtor-plaintiff's "receipt of a deceptive communication used to collect or attempt to collect a debt establishes that Plaintiff suffered a sufficiently 'concrete' and 'particularized' injury for purposes of Article III standing." *Balon*, 264 F. Supp. 3d at 610.

In *Bock v. Pressler & Pressler, LLP*, 254 F. Supp. 3d 724 (D.N.J. 2017), a case involving the deceptive implication that an attorney was meaningfully involved in the preparation of a collection complaint, the district court reached the same conclusion as the court in *Balon*.  As in *Balon*, court in *Bock* observed that "[i]n enacting FDCPA, Congress elevated certain abusive debt collection practices to the status of viable federal causes of action," including certain false representations, which in and of themselves violate a "substantive right" and "create[ ] a particularized and concrete injury."  *Id*. at 736.  Under such circumstances, a plaintiff "need not establish any 'additional harm' to surpass the standing threshold of concrete injury."  *Id*. (quoting *Spokeo*, 136 S. Ct. at 1549).

In another case from the District of New Jersey, *Thomas v. John A. Youderian Jr., LLC*, 232 F. Supp. 3d 656 (D.N.J. 2017), the court reached a similar conclusion.  In that case, the debtor-plaintiff received a collection letter stating that payment of his debt by credit card would

---

[12]      *See Balon v. Enhanced Recovery Co., Inc.*, 190 F. Supp. 3d 385, 392 (M.D. Pa. 2016) ("[W]hile the challenged language may not be false in all respects, it certainly is not completely true. Specifically, accepting the well pleaded facts and taking every inference in Plaintiff's favor, the settlement of Plaintiffs debt could not possibly have been reportable under the relevant exceptions.") (quotations and citations omitted).

incur a $3.00 convenience fee, which he claimed was not lawful and therefore deceptive and misleading. The district court found that "recent cases trend in favor of finding concrete injury under the FDCPA where the amount or validity of the debt has been misstated. That injury, as held in the cited cases, is one recognized by Section 1692e and its subsections, which protect consumers from false, deceptive, and misleading representations." *Id*. at 699 (footnote omitted). The court further observed that "such cases fit easily within the *Spokeo* rationale" because "[t]he right not to be given false information about the true amount owed is rooted in an interest traditionally recognized at law. Congress, in enacting the FDCPA, could give content to that interest and elevate particular violations of it to the status of a viable federal cause of action." *Id*.

In *Medina v. Allianceone Receivables Mgmt., Inc.*, No. CV 16-4664, 2017 WL 220328 (E.D. Pa. Jan. 19, 2017), a case relied on heavily by the court in *Balon v. Enhanced Recovery Co., Inc.*, the at-issue language in the collection letter stated, "[o]ur client Department Store National Bank will report forgiveness of debt as required by IRS regulation." *Id*. at *2. The defendant, however, "concede[d] that it would not have to notify the IRS of any debt forgiveness." *Id*. As to the debtor-plaintiff's standing to sue, which the defendant challenged, the court stated as follows:

> The FDCPA is designed to protect the consumer from the inherent harm caused when a debt collector, in seeking to collect a debt, is not straight with the consumer but instead makes a false or deceptive statement to achieve its purpose. The deceptive declaration in the letter about a requirement to report the consumer's resolution of the debt to the IRS creates a particularized and concrete injury, at the very least unnecessary fear and anxiety on the part of the consumer. While the harm may be intangible, it involves a de facto injury nonetheless. The FDCPA was enacted to provide redress for such a result. *See In re Nichelodeon Consumer Privacy Litig.*, 827 F.3d 262, 273-74 (3d Cir. 2016). Defendant's argument to the contrary would gut the salutary purpose of the FDCPA. Plaintiff has standing to bring this action.

*Medina*, 2017 WL 220328, at *1.

Similarly, in *Abraham v. Ocwen Loan Servicing, LLC*, 321 F.R.D. 125 (E.D. Pa. 2017), another 2017 decision from this district, the court found the parties had standing under the FDCPA to assert claims based on allegedly misleading loan modification agreements. This conclusion is notable because, beyond the plaintiffs' failure to identify a tangible harm, the at-issue modification agreements conveyed potential *benefits* to the plaintiffs. On this point the court stated as follows:

> Numerous courts have applying *Spokeo* found a sufficient "injury in fact" to support a FDCPA claim from allegations that a plaintiff suffered an "informational injury" because the character of a debt had been misrepresented.
>
> \*     \*     \*
>
> We find that the [plaintiffs] have standing to pursue their FDCPA claim. As the case law makes clear, it is sufficient under *Spokeo* if the FDCPA claim asserts that the character of a debt has been misrepresented since that is the kind of injury the FDCPA was intended to guard against, and no additional harm need be alleged. Ocwen's assertion that the [plaintiffs] possibly benefited from their loan modification does not negate their having a concrete informational injury from the allegedly deceptive balloon disclosure.

*Id.* at 166-68 (collecting cases).

More recently, in *St. Pierre v. Retrieval-Masters Creditors Bureau*, 898 F.3d 351 (3d Cir. 2018), the debtor-plaintiff alleged the defendant violated the FDCPA when it disclosed his debtor account number through a transparent window on an envelope sent in the mail. The Third Circuit noted that "unauthorized dissemination of personal information . . . causes an injury in and of itself." *Id.* at 357 (quoting *In re Horizon*, 846 F.3d at 639). The court concluded that the visibility of the account number therefore "'implicate[d] a core concern animating the FDCPA—

the invasion of privacy'—and thus [wa]s closely related to" a traditional harm.[13]  *St. Pierre*, 898

F.3d at 357-58 (quoting *Douglass v. Convergent Outsourcing*, 765 F.3d 299, 303 (3d Cir. 2014)).

Several decisions from outside of this Circuit are consistent with the trend of the above

cases.  Very soon after the decision in *Spokeo* was issued, the Eleventh Circuit decided *Church v.*

*Accretive Health, Inc.*, 654 F. App'x 990 (11th Cir. 2016), a decision cited by the district court in

*Abraham v. Ocwen Loan Servicing, LLC.*  In *Church*, a collection letter allegedly failed to

include certain disclosures, and the debtor-plaintiff did not claim any injury beyond being "very

angry" and "cr[ying] a lot."  *Id.* at 991.  The Eleventh Circuit analogized the debtor-plaintiff's

standing to the standing of a tester-plaintiff bringing suit under the Fair Housing Act.  It noted

that such a tester-plaintiff was found to have standing in *Havens Realty Corp. v. Coleman*, 455

U.S. 363, 373 (1982), notwithstanding that the tester-plaintiff "did not intend to rent an

apartment, and was merely posing as a renter to collect evidence of unlawful steering practices."

*Church*, 654 F. App'x. at 994.  The Eleventh Circuit concluded that,

> [j]ust as the tester-plaintiff had alleged injury to her statutorily-created right to truthful housing information, so too has Church alleged injury to her statutorily-created right to information pursuant to the FDCPA. The FDCPA creates a private right of action, which Church seeks to enforce. . . . through the FDCPA, Congress has created a new right—the right to receive the required disclosures in communications governed by the FDCPA—and a new injury—not receiving such disclosures.
>
> *       *       *
>
> Church has sufficiently alleged that she has sustained a concrete—*i.e.*, "real"—injury because she did not receive the allegedly required disclosures. The invasion of Church's right to receive the disclosures is not hypothetical or uncertain; Church did not receive information to which she alleges she was entitled. While this injury may not have resulted in tangible economic or physical harm that courts often expect, the Supreme Court has made clear an injury need not be tangible to be concrete.

---

[13]      The Court recognizes that *St. Pierre* is distinct from the other cases examined here in that the interest at issue—privacy—is distinct from the interest in receiving truthful information.

*Id.* at 993-94 (citing *Spokeo*, 136 S. Ct. at 1549).

In *Papetti v. Rawlings Financial Services*, 691 F. App'x 24 (2d Cir. 2017) (summary order), the Second Circuit addressed whether receipt of an allegedly-deficient collection letter by itself satisfies the injury-in-fact requirement. The defendant argued that the debtor-plaintiff "did not suffer an injury in fact because he alleged only 'procedural violations' of the FDCPA" which "cannot qualify as 'concrete' injuries following the Supreme Court's decision in *Spokeo*." *Id.* at 25. After explaining that the defendant had misinterpreted *Spokeo*, the Second Circuit stated as follows:

> [T]here can be no dispute that Sections 1692e and g of the FDCPA protect an individual's concrete interests. The purpose of the FDCPA is, among other things, to protect debtors from abusive debt collection practices by debt collectors. . . . Section 1692e protects a consumer's ability to fully avail himself of his legal rights by prohibiting debt collectors from deceiving or misleading debtors in the course of collecting a debt. Thus, the FDCPA violations alleged by Papetti, taken as true, entail the concrete injury necessary for standing.

*Id.* at App'x at 26.[14]

In *Macy v. GC Servs. Ltd. P'ship*, 897 F.3d 747 (6th Cir. 2018), the Sixth Circuit addressed the same question. After noting that, "[u]nsurprisingly, the parties present diverging interpretations of *Spokeo*," the court engaged in an exhaustive review of post-*Spokeo* cases from around the country. *Id.* at 754-56. The court then observed that *Spokeo* "categorized statutory violations as falling into two broad categories: (1) where the violation of a procedural right granted by statute is sufficient in and of itself to constitute concrete injury in fact" because Congress conferred the right to protect concrete interests and the violation presents a risk of harm to those concrete interests, and "(2) where there is a 'bare' procedural violation that does

---

[14]     In the end, the court affirmed the district court's grant of summary judgment in the defendant's favor on other grounds.

not meet this standard, in which case a plaintiff must allege 'additional harm beyond the one Congress has identified.'" *Id*. at 756 (quoting *Spokeo*, 136 S. Ct. at 1549). The court concluded that the defendant's alleged FDCPA violation was, by itself, sufficient to confer standing: "GC's letters present a risk of harm to the FDCPA's goal of ensuring that consumers are free from deceptive debt-collection practices because the letters provide misleading information about the manner in which the consumer can exercise the consumer's statutory right[s]," and, as such, the plaintiffs need not have alleged any additional harm beyond the one Congress has identified. *Id*. at 757.

In *Pierre v. Midland Credit Mgmt., Inc.*, No. 16 C 2895, 2019 WL 4059154, at *3 (N.D. Ill. Aug. 28, 2019), the district court found the existence of standing to challenge a collection letter which was very similar to the Letter here: it offered payment "options" on a time-barred debt and stated that because the debt was time-barred the collector would not sue to collect; however, it did not state that payment could potentially revive the statute of limitations. The court first distinguished *Pierre* from *Casillas v. Madison Ave. Assocs., Inc.*, 926 F.3d 329, 332 (7th Cir. 2019), a Seventh Circuit decision (relied heavily on by Credit Control here) in which the court found a defective collection letter did not by itself confer standing to sue. *See Pierre*, 2019 WL 4059154, at *3. The district court in *Pierre* observed that while *Casillas* concerned a collection letter which had omitted the required notice that a consumer's dispute of a debt must be in writing, *Pierre* concerned "not an incomplete letter, but a deceptive letter." *Id*. The court explained that failure to comply with the "statutory disclosure requirement" at issue in *Casillas* was distinct from the "information injury" suffered when a letter fails to relate "substantive information," the omission of which could be misleading or deceptive: "[t]he FDCPA violation at issue here was not a mere failure to inform the recipients of the letter of required statutory

disclosures. Rather, it was substantive, as it deceptively sought to entice action by the recipients." *Id*. at *4. Lastly, the district court found unpersuasive the defendant's argument that the debtor-plaintiff's deposition testimony negated jurisdiction; her testimony "was not a concession" that "she was not mislead or confused by the letter—quite the opposite." *Id*. at *5. The court observed that she had even testified to experiencing "emotional distress" after receiving the letter. *Id*. at *4.

The decisions reviewed up to this point have found receipt of allegedly violative collection letters sufficient, without more, to confer standing. The final group of decisions worth reviewing are those in which courts have found an FDCPA violation insufficient, by itself, to confer standing.

In *Benali v. AFNI, Inc.*, No. CV 15-3605, 2017 WL 39558 (D.N.J. Jan. 4, 2017), the district court concluded that the debtor-plaintiff did not have standing to sue on a collection letter that stated "[p]ayments made electronically . . . may be subject to a $4.95 processing fee. Payment sent by mail are not subject to any processing fee." *Id*. at *1. The court's conclusion rested on the fact that "the AT&T Mobility account referenced in the Collection Letter [was] not Plaintiff's." *Id*. Therefore, while the processing-fee language was a technical violation of the FDCPA, "[m]erely receiving the Collection Letter, without more, [was] not sufficient to confer Article III standing because, as Plaintiff unequivocally testified, the alleged 'debt' was not his, and he knew it immediately upon receiving the Collection Letter." *Id.* at *6. As such, it was "undisputed that there was no risk that Plaintiff would pay the $4.95 processing fee." *Id*. at *7.

In *Pozzuolo v. Portfolio Recovery Assocs., LLC*, 371 F. Supp. 3d 217 (E.D. Pa. 2019), a recent case from this district, a collection letter violated the validation notice requirement of 15 U.S.C. § 1692g in advising the debtor-plaintiff "that he could dispute the debt by telephoning

[the defendant] even though only a written dispute suffices to trigger the debt collector's obligations under § 1692g(b) to cease collection and provide verification of the debt to the consumer." *Id*. at 219. Notwithstanding this technical violation of the FDCPA, the plaintiff testified that "he merely skimmed the letter and had no intention" of disputing the debt, the court concluded he lacked standing. *Id*. at 220. Key to why the absence of an intent to dispute the debt negated standing was the court's observation that the "letter to Pozzuolo constituted a procedural violation of the FDCPA." *Id*. at 224.

Finally, in *Kamal v. J. Crew Grp., Inc.*, 918 F.3d 102 (3d Cir. 2019), a case brought under the Fair and Accurate Credit Transactions Act rather than the FDCPA, but noteworthy nonetheless, the Third Circuit explained that, up to the present, it had had "no occasion to consider" whether a purely procedural violation of a statute can alone confer standing. *Id*. at 112. This was because in past cases, "the underlying harm contemplated by Congress had already materialized or failed to materialize." *Id*. In *Kamal*, the court was "now presented with a case that require[d] [it] to consider the full reach of congressional power to elevate a procedural violation into an injury in fact." *Id*. On this point, the court concluded that, like several other circuits, it understood *Spokeo* "to instruct that an alleged procedural violation . . . manifest[s] concrete injury if the violation actually harms or presents a material risk of harm to the underlying concrete interest. If the violation does not present a material risk of harm to that underlying interest, however, a plaintiff fails to demonstrate concrete injury." *Id.* at 112-13.

## B.      Application to the facts of this case

The Court must now take the principles set forth in the above decisions and apply them to Credit Control's challenge to jurisdiction. As previously summarized, Credit Control contends that Cartmell's deposition testimony negates jurisdiction. Specifically, Credit Control argues

that Cartmell made multiple statements in his deposition establishing that "he did not intend to make a payment on the [debt], understood that the legal statute of limitations had run on the [debt], didn't feel threatened by the Letter, wasn't sued on the debt, and wasn't concerned about being sued on the debt."[15] Credit Control Mem. at 3. Cartmell in response argues that the weight of case law makes clear that the violation of a substantive right conveyed by statute—like the right to receive truthful information conveyed by the FDCPA—is sufficient in itself to confer standing without any further showing. *See* Cartmell Opp'n. at 6-14. Assuming without deciding that the at-issue omission of the Letter here—*i.e.*, the Letter's failure to inform Cartmell that making any payment on his debt, as the Letter invited, could revive the statute of limitations— constituted a deceptive or misleading representation in violation of 15 U.S.C. § 1692e, the Court must conclude that Cartmell's receipt of the Letter is, in itself, sufficient to confer standing upon him to sue Credit Control for violation of the FDCPA. He need make no further showing.

This conclusion is mandated by the nature of the alleged violation and the right of which Cartmell is being deprived as a result. As the above cases make clear, there is a significant difference between the violation of a statutorily-conferred procedural right which is disconnected from some concrete interest—"a procedural right *in vacuo*"—and the violation of a statutorily-conferred right which is intended to protect a concrete interest. *Summers v. Earth Island Institute*, 555 U.S. 488, 496 (2009). The former "is insufficient to create Article III standing. Only a person who has been accorded a procedural right to protect *his concrete interests* can assert that right without meeting all the normal standards for redressability and immediacy." *Id.*

---

[15]     Cartmell was working with a credit repair agency who was advising him as to which debts to pay and which debts not to pay. Cartmell testified that he only filed the instant action after an attorney from the credit repair agency told him he should pursue litigation with respect to the Letter.

As several of the examined cases explain, an otherwise procedural statutory right is, when intended by Congress to protect a clear, concrete interest, properly characterized as a "substantive right." In the context of the FDCPA, the right conferred by 15 U.S.C. § 1692e's prohibition on false, deceptive, or misleading representations is "[t]he right to truthful information," which, centered as it is on a concrete interest, "is a substantive right." *Balon v. Enhanced Recovery Co., Inc.*, 264 F. Supp. 3d 597, 610 (M.D. Pa. 2017) (quoting *Bock v. Pressler & Pressler, LLP*, 254 F. Supp. 3d 724, 733 (D.N.J. 2017)).

The Court finds this characterization of the right conferred by Section 1692e—a "substantive right" to truthful or non-misleading information in the debt-collection process—to be appropriate and consistent with the vast weight of the authorities the Court has examined. Indeed, there is little disagreement in the case law as to what "interests" Congress was attempting to protect in enacting the FDCPA, or whether those interests are sufficiently "concrete" to constitute a substantive right—the deprivation of which creates a de facto informational injury. [16] *See, e.g.*, *Medina v. Allianceone Receivables Mgmt., Inc.*, No. CV 16-4664, 2017 WL 220328, at *1 (E.D. Pa. Jan. 19, 2017) (explaining that although the harm caused by a deceptive communication "may be intangible, it involves a de facto injury nonetheless[; t]he FDCPA was enacted to provide redress for such a result"); *Thomas v. John A. Youderian Jr., LLC*, 232 F. Supp. 3d 656, 669 (D.N.J. 2017) ("The right not to be given false information about the true amount owed is rooted in an interest traditionally recognized at law. Congress, in

---

[16] As the court characterized it in *Abraham v. Ocwen Loan Servicing, LLC*, deprivation of the right conferred by Section 1692e constitutes an "informational injury." 321 F.R.D. 125, 168 (E.D. Pa. 2017) ("As the case law makes clear, it is sufficient under *Spokeo* if the FDCPA claim asserts that the character of a debt has been misrepresented since that is the kind of injury the FDCPA was intended to guard against, and no additional harm need be alleged. Ocwen's assertion that the Caves possibly benefited from their loan modification does not negate their having a concrete informational injury from the allegedly deceptive balloon disclosure.").

enacting the FDCPA, could give content to that interest and elevate particular violations of it to the status of a viable federal cause of action."); *Balon*, 264 F. Supp. 3d at 610 (explaining that through the FDCPA, "Congress elevated certain abusive debt collection practices to the status of viable federal causes of action," including the conduct prohibited by 15 U.S.C. § 1692e); *Papetti v. Rawlings Financial Services*, 691 F. App'x 24 (2d Cir. 2017) (summary order) ("[T]here can be no dispute that Sections 1692e and g of the FDCPA protect an individual's concrete interests. The purpose of the FDCPA is, among other things, to protect debtors from abusive debt collection practices by debt collectors. . . . Section 1692e protects a consumer's ability to fully avail himself of his legal rights by prohibiting debt collectors from deceiving or misleading debtors in the course of collecting a debt."); *Church v. Accretive Health, Inc.*, 654 F. App'x 990, 993 (11th Cir. 2016) ("The FDCPA creates a private right of action, which Church seeks to enforce. . . . [T]hrough the FDCPA, Congress has created a new right—the right to receive the required disclosures in communications governed by the FDCPA—and a new injury—not receiving such disclosures.").

Therefore, because protecting against the harm resulting from deceptive or misleading communications was a primary goal of the FDCPA, a violation of Section 1692e's prohibition on false, deceptive, or misleading communications deprives a debtor of his or her substantive right to truthful information. A debtor who receives a deceptive or misleading communication accordingly "need not establish any 'additional harm' to surpass the standing threshold of concrete injury." *Bock*, 254 F. Supp. 3d at 736 (quoting *Spokeo*, 136 S. Ct. at 1549); *Abraham*, 321 F.R.D. at 168 ("[I]t is sufficient under *Spokeo* if the FDCPA claim asserts that the character of a debt has been misrepresented since that is the kind of injury the FDCPA was intended to guard against, and no additional harm need be alleged."). To require more would be to deprive

20
011020

debtor-plaintiffs of a remedy Congress clearly intended to confer. *See Balon*, 264 F. Supp. 3d at 610. In this way, Cartmell's receipt of Credit Control's collection letter subjected Cartmell to a de facto concrete injury—the deprivation of his substantive right to truthful information.

While this conclusion is consistent with *Spokeo* and the many decisions that have applied it, it is also consistent with how the Supreme Court has addressed the standing of "tester-plaintiffs." Indeed, the "tester-standing" analogy is particularly insightful here. As noted previously, tester-standing in the Fair Housing Act context was addressed by the Supreme Court in *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982). The tester-plaintiff in *Havens Realty Corp.*—an African American "tester" who, in "testing" for violations of the Fair Housing Act, applied to rent apartments with no intent of actually renting—alleged only an informational injury: receipt of false information that there were no apartments available to rent when, in fact, there were apartments available to white applicants. The Supreme Court explained that the Fair Housing Act "establishes an enforceable right to truthful information concerning the availability of housing" and a "tester who has been the object of a misrepresentation made unlawful under [the Fair Housing Act] has suffered injury in precisely the form the statute was intended to guard against, and therefore has standing to maintain a claim for damages under the Act's provisions." *Id.* at 373-74. In *Church v. Accretive Health, Inc.*, 654 F. App'x 990 (11th Cir. 2016), the Eleventh Circuit applied the logic of *Havens Realty Corp.* to the FDCPA, explaining that, "[j]ust as the tester-plaintiff had alleged injury to her statutorily-created right to truthful housing information [in *Havens Realty Corp.*], so too has Church alleged injury to her statutorily-created right to information pursuant to the FDCPA." *Church*, 654 F. App'x at 994. The Court agrees with the Eleventh Circuit's analysis; the type of injury the Fair Housing Act and the FDCPA

were enacted to remedy—and the concomitant private right of action they create—are particularly analogous.

The several cases examined above in which courts have determined FDCPA plaintiffs lacked standing further support the Court's conclusion that Cartmell has established it here. In *Pozzuolo v. Portfolio Recovery Assocs., LLC*, 371 F. Supp. 3d 217 (E.D. Pa. 2019), the defendant's collection letter gave the debtor-plaintiff two options for disputing his debt—orally and in writing—without informing him that only a written dispute triggers the debt collector's statutory obligations to cease collection attempts. Similarly, as the district court in *Pierre v. Midland Credit Mgmt., Inc.*, No. 16 C 2895, 2019 WL 4059154 (N.D. Ill. Aug. 28, 2019) observed, the Seventh Circuit's decision in *Casillas v. Madison Ave. Assocs., Inc.*, 926 F.3d 329 (7th Cir. 2019)—the lynchpin of Credit Control's argument[17]—concerned a failure to comply with the "statutory disclosure requirement" regarding disputing a debt. *Pierre*, 2019 WL 4059154, at *4. As the district court in *Pierre* explained, the FDCPA violation at issue in *Casillas* was distinct from the "information injury" suffered when a letter fails to relate "substantive information," the omission of which could be misleading or deceptive. *Id.* Finally, in *Benali v. AFNI, Inc.*, No. CV 15-3605, 2017 WL 39558 (D.N.J. Jan. 4, 2017), the district court concluded that where no harm beyond receipt of a collection letter was alleged, and the letter stated that "[p]ayments made electronically . . . may be subject to a $4.95 processing fee[; p]ayment sent by mail are not subject to any processing fee," the debtor-plaintiff did not have standing to sue. *Id.* at *1.

---

[17]    *See* Credit Control Mem. at 8-9.

22
011020

In *Pozzuolo, Casillas*, and *Benali*, the manner in which the collection letter violated the FDCPA was key to the finding that the plaintiff did not have standing to sue. As these cases illustrate, where a collection letter violates the FDCPA in a manner that can be characterized as "incomplete" or "erroneous" rather than misleading or deceptive—that is, where the letter includes incomplete or inaccurate information but does not attempt to persuade or dissuade in a deceptive manner—receipt of the letter will not by itself constitute an "informational injury" sufficient to confer standing. This distinction is but one embodiment of the distinction between "procedural" and "substantive" statutory rights discussed at length. The district court in *Pierre* described this distinction well: "[t]he FDCPA violation at issue here was not a mere failure to inform the recipients of the letter of required statutory disclosures. Rather, it was substantive, as it deceptively sought to entice action by the recipients." 2019 WL 4059154, at *4. Framing the procedural vs. substantive distinction in terms of incomplete vs. deceptive communications in this manner further helps to illustrate why, assuming, as the Court does, that Credit Control's collection letter was a "deceptive" communication under Section 1692e, its receipt alone is sufficient to confer standing.

The final issue that must be (briefly) addressed is the affirmative evidence Credit Control puts forwards: Cartmell's testimony that he understood the debt was beyond the statute of limitations, and that he never intended to pay it. Put simply, it is of no moment that Cartmell did not intend to pay the debt. Congress conferred upon him a substantive right to receive truthful, non-deceptive information, which Credit Control violated when it sent, and Cartmell received, the Letter in this case. Cartmell's receipt of the letter was itself the informational harm the FDCPA was enacted to prevent. *Abraham*, 321 F.R.D. at 168 ("[I]t is sufficient under *Spokeo* if the FDCPA claim asserts that the character of a debt has been misrepresented since that is the

kind of injury the FDCPA was intended to guard against, and no additional harm need be

alleged."). [18]

## IV.    CONCLUSION

For the foregoing reasons, Cartmell has alleged facts sufficient to establish his standing to

sue, and Credit Control's motion to dismiss is denied.  Considering this determination, and in

light of the three remaining motions in this case, the Court will be scheduling this matter for a

telephone conference to discuss with counsel how the case should proceed.[19]  The date and time

of that conference will be set forth in a subsequent Order.

BY THE COURT:

/s/ Joseph F. Leeson, Jr._____
JOSEPH F. LEESON, JR.
United States District Court

---

[18]    The court's analysis in *Abraham* further illustrates that what Cartmell intended to do or not do with the information contained in the Letter is irrelevant.  It is precisely because access to truthful information is the concrete interest protected by the statute (rather than what action is taken on that information), that the court in *Abraham* determined the plaintiffs had standing to sue even though they received or likely received *benefits* as a result of their receipt of the violative communication.  *See id.* ("Ocwen's assertion that the [plaintiffs] possibly benefited from their loan modification does not negate their having a concrete informational injury from the allegedly deceptive balloon disclosure.").

[19]    It is unclear whether either side wishes to engage in class discovery if (1) Cartmell wishes to move forward with his motion for class certification and (2) the Court grants the motion.  Although the fact discovery deadline has passed, the Court recognizes that were the class certification motion to be granted, the parties would likely be entitled to some class discovery.  The Court also wishes to hear from counsel as to how they anticipate the pending motions for summary judgment being affected by potential class discovery.